39 F.3d 1189
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald GOBERT, Defendant-Appellant.
 No. 93-50708.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 3, 1994.*
Decided Oct. 31, 1994.
 
 1
 Before: WALLACE, Chief Judge, REINHARDT, Circuit Judge, and TANNER,** District Judge.
 
 MEMORANDUM
 
 2
 Gobert appeals from his conviction and sentence for conspiracy to commit armed bank robbery in violation of 18 U.S.C. Sec. 371, aiding and abetting the use of a firearm during a crime of violence in violation of 18 U.S.C. Secs. 924(c), 2, and possession of stolen travelers checks in violation of 18 U.S.C. Sec. 2113(c). He argues that there is insufficient evidence to support the conspiracy and aiding and abetting convictions; that the jury was instructed improperly on the law of conspiracy; that his trial counsel provided ineffective assistance in violation of the Sixth Amendment; and that he was erroneously sentenced under the United States Sentencing Guidelines. The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3231. We have jurisdiction over this timely appeal under 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291. We affirm Gobert's entire conviction and his sentence under count II, vacate his sentences under counts I and III, and remand for resentencing on those counts.
 
 
 3
 * After the verdict, Gobert did not move for acquittal. "Therefore, he has waived any claim for reversal based on insufficiency of the evidence. The court's review of this issue is proper only to avoid a manifest miscarriage of justice or plain error." United States v. Stauffer, 922 F.2d 508, 511 (9th Cir.1990).
 
 A.
 
 4
 Conviction on a conspiracy charge requires (1) an agreement to engage in criminal conduct, (2) an overt act taken to implement the agreement, and (3) the intent to commit the substantive offense. See United States v. Indelicato, 800 F.2d 1482, 1483 (9th Cir.1986). The agreement can be inferred from the facts and circumstances of a case. Id. The "uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or unsubstantial on its face." United States v. Lopez, 803 F.2d 969, 973 (9th Cir.1986), cert. denied, 481 U.S. 1030 (1987).
 
 
 5
 Gobert argues that his conspiracy conviction can only be sustained if the testimony of Montgomery was believed by the jury. He further asserts that two jury notes (notes 3 and 6) submitted to the court during deliberations show that the jury did not believe Montgomery's testimony.
 
 
 6
 There was other evidence, apart from Montgomery's testimony, linking Gobert to the conspiracy to rob the bank. Renee Woods testified that Gobert admitted he got the checks in a bank robbery. The fact that Gobert had possession of the checks so soon after the robbery would also permit the inference that he was involved in the robbery.
 
 
 7
 A claim that the jury did not believe a witness is "generally immune from appellate review." United States v. Gordon, 844 F.2d 1397, 1405 (9th Cir.1988). We must view testimony of the witness and the surrounding evidence in the light most favorable to the government. Id. In this case, it would simply be speculation to conclude, as Gobert would have us do, that the jury must have discredited Montgomery's testimony. There was no manifest miscarriage of justice or plain error.
 
 B.
 
 8
 Gobert also argues that his conviction for aiding and abetting must be reversed for insufficient evidence. Convicting Gobert of aiding and abetting the use of a firearm in the bank robbery requires proof that he was associated with the robbery and participated in it with the aim that it succeed. See United States v. Vasquez-Chan, 978 F.2d 546, 552 (9th Cir.1992) (evidence of mere proximity to drugs or observation of activities insufficient to convict of aiding and abetting the possession of others).
 
 
 9
 Gobert's argument here mirrors his argument regarding his conspiracy conviction: if the jury discredited Montgomery's testimony, there was no evidence that Gobert knew that a gun was going to be used in the robbery. For the reasons discussed above, there was no manifest injustice or plain error on the conviction on this count.
 
 II
 
 10
 Gobert next challenges the district court's response to jury notes 3 and 6. As there was no objection to the jury instructions at the time of trial, we review for plain error. United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir.1993).
 
 A.
 
 11
 The response to jury note 3 was not plain error. One who joins an existing conspiracy is liable for the substantive offenses that occurred before joining, so long as one embraces the common purpose of the conspiracy. United States v. Umagat, 998 F.2d 770, 772-73 (9th Cir.1993). The judge's response to the question, indicating that the answer was no, was proper because based on the jury's assumptions in the question, a person who cashes a stolen check "without specific knowledge of the bank robbery" would not be guilty of a conspiracy the object of which was to rob a bank. But the judge was also correct to point the jury to the previous instruction, which highlighted the fact that one who willfully joins an existing conspiracy is held accountable just as if they had been a member from the beginning, whereas one who has "no knowledge of a conspiracy" cannot be found guilty. The instruction made it clear that there must be both knowledge of the conspiracy and an overt act that furthers some object or purpose of the conspiracy.
 
 B.
 
 12
 Gobert also objects to the judge's response to jury note 6 which, like note 3, asked for a clarification on a point of law relating to conspiracy. The jury wanted to know if someone who cashes stolen checks having "some knowledge of the conspiracy (possibly obtained after the robbery)" becomes a party to the conspiracy.
 
 
 13
 The judge was not required to give an instruction on the possibility of multiple conspiracies. Gobert never raised this in his defense, and the judge cannot be expected to instruct the jury on a conspiracy theory that neither the government nor the defendant puts forth. One--and only one--conspiracy was charged in the indictment, argued at trial, and instructed on. There could be no "jury confusion" resulting in a conviction for a conspiracy not specified in the indictment. United States v. Paris, 827 F.2d 395, 402 (9th Cir.1987). It was certainly not plain error to avoid the possibility of confusing the jury by discussing multiple conspiracies.
 
 
 14
 What the judge is expected to do, and what was done here, is to refer the jury to the most helpful sections of the jury instructions to clarify the law. He did so. That was not plain error.
 
 III
 
 15
 Gobert next argues that he was denied a fair trial because his Sixth Amendment right to effective assistance of counsel was violated. "Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo." United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991), quoting Smith v. Ylst, 826 F.2d 872, 875 (9th Cir.1987), cert. denied, 488 U.S. 829 (1988). To establish a claim of ineffective assistance of counsel, Gobert must demonstrate that (1) his counsel's actions "fell below an objective standard of reasonableness" and that (2) Gobert was prejudiced in a way that deprived him of a fair trial resulting in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." United States v. Espinoza, 866 F.2d 1067, 1070 (9th Cir.1988), quoting, Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).
 
 
 16
 Gobert alleges that his attorney rendered ineffective assistance when, during the cross-examination of Montgomery (admittedly the key government witness), the attorney asked Montgomery about his prior involvement in other bank robberies. These questions led Montgomery to explain that Gobert had also been involved in these other crimes. These questions also allowed the government, on redirect, to elicit information about Gobert's involvement in these other robberies.
 
 
 17
 The attorney's conduct in this case did not fall outside of the "wide range" of professional assistance that Gobert was entitled to receive. As a matter of strategy, Gobert's attorney was trying to show that Montgomery always implicates Gobert in Montgomery's robberies in order to "cut a deal" with the government. During the opening argument, Gobert's attorney discussed how Montgomery "started giving information" because he "had nothing to deal" and "had to try to mitigate" his responsibility. During closing argument, Gobert's attorney again referred to Montgomery's involvement and said "Derrick Montgomery is a maligner. He is also working a real good scam. It got him out of custody. It is keeping him out of custody, along with other things. He is not paying the price that is normally elicited from a three-time robber."
 
 
 18
 Given this strategy, the questions by Gobert's attorney to Montgomery on cross-examination were "not so unreasonable as to mark counsel as ineffective" even if unwise in retrospect. Because we conclude that counsel's performance was not so deficient as to constitute objectively unreasonable conduct, we need not examine whether the result of Gobert's trial would have been different without Montgomery's testimony about Gobert's involvement in other crimes.
 
 IV
 
 19
 Gobert's final argument is that he was improperly sentenced under the Guidelines. We review de novo the application of the Sentencing Guidelines. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1993) (en banc).
 
 
 20
 Gobert was sentenced to 60 months on count I (the conspiracy), 60 months consecutive on count II (aiding and abetting in the use of a firearm during a crime of violence), and 115 months on count III (possession of stolen bank property). Gobert does not challenge the count II sentence. Gobert does challenge the base offense level given to him for his other crimes.
 
 
 21
 The district court followed the presentence report which calculated the base offense for counts I and III as follows:
 
 
 22
 Base Offense Level: The guideline for an 18 USC 371 offense is found in section 2X1.1. Although the defendant was found guilty of 18 USC 2113(c): Possession of stolen property from a bank, Appendix A--Statutory Index (Introduction), specifically states that in an atypical case, if the guideline section indicated for the statute of conviction is inappropriate because the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted. In this case, the guideline for the object of the offense is found in Section 2B3.1 of the Guidelines (Bank Robbery). Section 2B3.1 specifies a base offense level of 20.
 
 
 23
 The statutory index to the Sentencing Guidelines, U.S.S.G. Appendix A, specifies that a violation of 18 U.S.C. Sec. 2113(c) results in the application of U.S.S.G. Sec. 2B1.1. The introduction to the statutory index states, however, that:
 
 
 24
 If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted.
 
 
 25
 In Gobert's case, there is no indication that possessing the stolen travelers checks--which has a base offense level of 4 under section 2B1.1 (with a 5 point upward departure where the amount exceeds $10,000)--should have resulted in a total offense level of 23. Nothing in the commentary of section 2B1.1 suggests that a possession charge should be treated like a bank robbery charge. Gobert was convicted in count III of possessing stolen bank property, not bank robbery.
 
 
 26
 The government correctly points out that the base offense level for conspiracy, count I of the indictment, is established at the same level of the underlying substantive offense. See U.S.S.G. Sec. 2X1.1. The substantive offense of robbery, under section 2B3.1, is 20. However, the fact that the conspiracy charge has a base offense level of 20 does not, as the government suggests, render proper the use of a 20 base level offense for possession of stolen property.
 
 
 27
 The government suggests harmless error by arguing that pursuant to section 3D1.2(b), counts involving the same victim and two or more acts connected by a common scheme or plan are grouped together; and that the offense level given to that group of conduct is the offense level for the "highest offense level of the counts in the Group." U.S.S.G. Sec. 3D1.3(a). Thus, the conspiracy and possession counts, because they were grouped together, would have one base level offense--that of the conspiracy, which is 20.
 
 
 28
 However, Application Note 4 provides insight into the kinds of counts that are to be "grouped" together under section 3D1.2(b). Regarding a conspiracy, that note reads:
 
 
 29
 When one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under subsection (b).
 
 
 30
 U.S.S.G. Sec. 3D1.2 App. Note 4 (emphasis added).
 
 
 31
 In this case, as discussed earlier, the possession charge was not part of the object of the bank robbery conspiracy. The indictment specifically stated that the objects of the bank robbery conspiracy were to rob the bank, in violation of 18 U.S.C. Sec. 2113(a) and (d), and to use a gun while doing so, in violation of 18 U.S.C. Sec. 924(c). The government concedes this much in its brief: "Count one of the indictment charged a single conspiracy with two objects: to rob traveler's checks from Union Federal and to use a gun in committing the robbery." The charge of aiding and abetting an armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a) and (d), which could have been grouped together with the conspiracy charge under section 3D1.2(b), was actually dismissed in this case because the government did not comply with a 30-day time period set forth in 18 U.S.C. Sec. 3161. The government chose to proceed to trial on the remaining counts. The other object of the conspiracy, a violation of 18 U.S.C. Sec. 924(c), is given a consecutive sentence under U.S.S.G. Sec. 2K2.4, making "grouping" inappropriate for that object of the conspiracy. See U.S.S.G. Secs. 3D1.1(b) and 3D1.2 App. Note 1.
 
 
 32
 The government now argues that a crime with an offense level of 4 (possession of stolen property in violation of 18 U.S.C. Sec. 2113(c)) should be grouped with a crime of an offense level of 20, producing a sentence of 115 months on the crime with the base level offense of 4. It is clear that the provision allowing charges to be grouped together was not meant to allow an end run around the policies of proportionate and predictable punishment that the Guidelines sought to impose. See Guidelines, Ch. 1, Pt. A, no. 3 (policy statement) (Guidelines seek to impose "fair sentencing" and "reasonable uniformity"). The government cannot substitute the violation of 18 U.S.C. Sec. 2113(c), which was not charged as one of the objects of the conspiracy, for the 18 U.S.C. Sec. 2113(d) and (a) violation that was dismissed. Because the substantive bank robbery charge was dismissed, and because the crime of using a firearm during and in relation to a crime of violence (count II) was sentenced consecutively under the Guidelines, there was no crime left to "group" with the conspiracy in this case. Because counts I and III were improperly grouped together under section 3D1.2(b), we vacate those sentences.
 
 
 33
 We affirm Gobert's conviction on all counts and his sentence on count II, vacate his sentences on count I (conspiracy in violation of 18 U.S.C. Sec. 371) and count III (possession of stolen bank property in violation of 18 U.S.C. Sec. 2113(c)) and remand for resentencing on those counts.
 
 
 34
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 35
 Note: This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.
 
 
 
 *
 Honorable Jack E. Tanner, United States District Judge, Western District of Washington, sitting by designation
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4